Judge Nicholas
delivered the Opinion of the Court.
Halley filed his bill against Jesse Stone and the widow, administrators and heirs of William Stone, deceased, to subject the interest of Jesse in the estate of William, as one of his children, to the payment of an unsatisfied judgment, which he held on Jesse. Pending the suit, the widow died, and by an amended bill, he prayed to subject the interest of Jesse in her estate also.
William Stone and his said wife had ten children: three sons (Jesse, James and Micajah,) and seven daughters. Jesse and James each received from their father, in his life time, a tract of land, by way of advancement, of the value of fifteen hundred dollars. Jtesse also received, in money and personalty, two hundred and eighty five dollars, fifty cents; James two hundred and fifty dollars; Micajah seven hundred and fifty dollars, and the seven daughters one hundred and fifty dollars each. After the death of William Stone, his land was sold, by assent of his heirs, for two thousand nine hundred and sixty dollars. Two thirds of his slaves, of the value of three thousand one hundred and fifty dollars, were distributed among Micajah Stone and the seven daughters; after the widow’s death, the other third of the slaves were sold for one thousand nine hundred and thirty five dollars, eighty one cents ; and the net proceeds of his personalty was one thousand six hundred and seventy two dol-’ lars, thirty two cents. From which it appears, that Jesse and James had each been advanced in land, more than their respective shares of the whole real estate and slaves, and in personalty nearly to the amount of their respective shares in the whole personal estate.
Advancements instaresareuot to be brought m-to hotchpot in oFpersoraafty1 norvice versa, "Advancements inland,orsiaves be brought*1 into divHon1 of tile ther, or both,
The net proceeds of the widow’s estate, after deduct» ing a legacy of six hundred dollars, to Micajah Stone, was two hundred and sixty three dollars, sixty four cents* This, together with the proceeds of William Stone’s personal estate, and all the advancements in money and personalty to his children, was thrown by the circuit court, into hotchpot ; and a small balance was thereby produced in favor of Jesse Stone, for which, and one tenth of the value of the slaves, Halley obtained a decree.
In reviewing this decree, the principal, question presented for determination, is the propriety of that part of it which gives Halley one tenth of the value of the slaves. This necessarily depends upon whether the advancement to Jesse Stone, in land, ought to have been brought into, hotchpot, in making partition of the slaves.
It was determined in the cases of Quinn vs. Stockton, 2 Lit. 348 and South vs. Hoy, 3 Mon. 93, that advance ’ a’ 7 , merits in slaves were not to be brought into hotchpot, m distribution of personalty, and vice versa ; lor the obvious reason, that slaves are not personalty. But we are now' aware of any decision, that advancements in land shall not be.brought into a division of slaves. The act 1798, which converts slaves into real estate, 2 Dig. declares, they shall descend as lands are directed to descend in and by an act of the General Assembly, entitled, an act directing the course of descents. Former decisions have fixed this, as a reference to the act of 1785, 1 Dig. 435, the fifteenth section of which is in these words : — “ Where any of the chidren of the intestate or their issue, shall have received from the intestate, in his life time, any real estate by way of advancement, and shall choose to come into partition, with the other parceners, such advancement shall be brought into hotch-pot with the estate descended.”
We know no process of reasoning by which advancements of land or slaves, can be exempted from the operation of the express letter and unambiguous import of these acts, when a partition is sought of either. Nor can we concede, that there is any principle of policy which ought to induce an effort to create a distinction, not to be found in a literal interpretation of these acts. On the *199 Contrary, since the decisions which have exempted slaves and personalty from going into hotchpot with each other, every dictate of policy, as well as justice, requires, that slaves and land should be brought and kept together with regard to this subject. Unless this be done, that perfectly fair and equal division of an intestate’s estate among his children, which our law contemplates, must, many times, be essentially frustrated. We, consequently, consider the circuit court erred in this part of its decree.
Distributeemay t^distríbutimf 'and retain his advancement-
A testatrix, in maIans a be-questtoherson, used language hB1' dx-pentatlón; and reason for the thatmfadvaneement made by would he brought into that hl>he could not retain tfu-ad-claim the legacy t0°-
J'he next question is, whether the advancement of seven hundred and fifty dollars, to Micajah Stone, should have been thrown into hotchpot with the personalty and other advancements. It is not pretended .that, in the general, this could properly be done ; for a distributee certainly has the right to retain his advancement, and waive any claim on the personalty. But it is thought there are circumstances here which authorize this part „ , , „... _ . , 1 , of the decree oí the circuit court. Previous to the death of the widow, it was a contested matter among those o concerned, whether Micajah was bound to account, as distributee, for six hundred dollars, of the seven hundred and fifty dollars advanced to him. The widow, after devising six hundred dollars to Micajah, and directing the balance of her estate to be divided as if she had made no will, proceeds thus : — “I further wish to leave on record, my reasons for making the donation I have to my son. It is in consequence ol my husband’s releasing him from the payment of a note, by destroying the same, which he did, as I believe, with a design he never should account for it in any way. On hearing that some of my sons-in-law, intends pushing a law suit to bring the above named note, or rather its amount, into a general, which act I disapprove of, and take this method to settle the difference.”
We think it fairly inferrible from this language, that the testatrix intended the six hundred dollars to be paid to Micajah, only on condition of his being made to account for a like sum, as a distributee of his father. She certainly did not contemplate his withholding the six hundred dollars advanced by the father, and receiving *200 that devised by her also. Her intent was to make good, what she believed to have been the intention of her husband, that Micajah should receive six hundred dollars more of his estate than his other children, and which intention she supposed would be defeated unless she made him an equivalent in this way. If she had intended it as an unqualified and unconditional act of bounty oh her own part, there would have been no need for setting forth so particularly her reasons for the devise to him, and they would most probably have been omitted, as they would have been no way pertinent, but wholly inapplicable as reasons for an unqualified bounty from herself. As then he could not take the devise, and withhold accounting for the advancement both, and as it was most for his interest to take the devise and account for the advancement, the court did Tight in treating it in that way.
A distributee agreeing to take a specific sum, (horse and saddle,) and waive his right to distribution,hé and his creditor at-taehingthefimd, by bill filed after the agreement,are bound by it.
Bill,by a credit- or, against adm. heirs, fyc. to subject the interest of one of them, to payment of a debt, costs to be given against the debtor only.
This mode of adjusting the personalty, produces a small sum in favor of Jesse Stone ; and if there was nothing in his way, Halley would be entitled to the decree rendered in his favor therefor. But it is proved, that, at the time of distributing the slaves and personalty, Jesse Stone was present, and in consideration of a horse and saddle then given him, and what he had received in his father’s life time, waived any claim as a distributee of the estate. The horse and saddle were worth within a few dollars as much as he could have obtained from his father’s estate. This transaction took place before the institution of Halley’s suit, and we think he, as well as Jesse Stone, should be bound by it. The consequence was, that Halley was entitled to no relief as against the administrators and heirs of William Stone ; and the extent of his recovery must be confined to Jesse Stone’s one tenth of the net proceeds of his mother’s estate.
The decree must be reversed, with costs, and the cause remanded, with directions to dismiss the orginal bill, with costs, as to the administrators and heirs of William Stone ; and upon his amended bill, to render him a decree against the executor of Mrs. Stone, for twenty six dollars, thirty six cents, hut without costs against any of the defendants, except Jesse Stone.